ROANE, Judge.
This is an action of ejectment for a, tract of land, and the question depends on the construction of the will of Robert Tate, of the 11th of May, 1777.
The particular clause of that will, which gives rise to it, is in the following words: “I will and bequeath to my *311 ¿on Jesse Tate all the land I hold, &c. (the premises in questionf) now, if the said Jesse Tale should die, not having any lawful heir of his body, then the said laud 10 go to my youngest son John Tate.” And the question is, what estate the devisee, Jesse Tate, took in the premises in question.
The doctrines of the law are common to this case, and to the case of Hill v. Burrow, just decided, except so far as a distinction may arise from the different phraseology of, and circumstances appearing in the wills, and from tiie consideration which was much pressed upon us, that the will before us was made posterior to the act of 1776, docking entails.
This being the case, I shall, to save time, refer to my opinion just delivered in that case; and especially to such parts uf it as go to fortify the case of Forth v. Chapman, and to shew, that even in the case of chattels, it is not the general intention solely, which authorises a restrictive construction relative to that subject, but a particular intention inferrable from the will and case itself, coming in aid of the supposed general intention. Mr. Wickham’s great argument was, that since the act of 1776, prohibiting entails, there is the same general intention as relative to both kinds of property, and that real property, since that time, stands on a common ground with personal. If this wore so, it still is not enough, unless he shews also, that under this will, in the ease of personal property, a restrictive construction would have been adopted.
This, I apprehend, would not have been the case; but I shall not waste time to enquire, whether it would or would not, thinking it best for the public good to go at once into the great question; and being equally clear upon that question, that it is quite immaterial, whether the will was prior to the act of 1776, or since.
The Legislative construction of the act of 1792 accords, with my own opinion on the same subject. It is entitled to respect, but would not bind this Court to adopt the same construction, contrary to their own judgment in relation tp prior cases.
The act of 1776 declares, “that any person who now hath or hereafter may have, any estate in fee tail general or special in any land, &c. in possession, &c. or who now is, or hereafter may be entitled to any such estate-tail, in reversion or remainder, &c. whether such estate-tail hath been or shall be created by deed, will, act of Assembly, *312 or by any other ways or means, shall, from henceforth, or from the commencement of such estate-tail, stand seised, &c. to such lands, &c. so held or to be held, &c. in full and absolute fee simple, in like manner as if such deed, will, &c. had conveyed the same to him in fee simple: Any words, limitations or conditions in the said deed, will, &c. to the contrary notwithstanding.”
There can be but one possible construction of this act, and that is, that it converts estates-tail into fee simple, but refers to and reserves all laws then in force, for the decision of the question, whether in future as well as in past cases, an estate-tail would, (but for the interposition of the act,) have passed or not? If such reference is not made to the laws, what could the Legislature mean, after annihilating estates-tail, by pointing the act also against estates-tail, which persons might hereafter have, and which they might hereafter be entitled to? Why else direct it against estates-tail, which shall be created by deed, will, &c. ? why else refer to the commencement of a future estate-tail? why else use the expression relative thereto, to be held, &c. ?
Upon any other construction, the act is a complete felo de se, as to future cases, in respect of all those emphatieal expressions. It is no novelty, even for Courts to refer to the lex temporis, for the construction of instruments and contracts. The Legislature has gone upon the same principle in the present instance; but, when the reserved law has had its operation in relation to the construction of estate-tail, the act of 1776 steps in and enlarges the interest into a fee simplé.
The present attempt of the appellant is to take from the tenant and his heirs, by construction and analogy, that interest which it is the particular object of this act to secure to them, and which it is provided that no express limitation by the party in the deed or will itself shall affect or frustrate. *
I am, therefore, for affirming the judgment.
FLEMING, Judge.
There can be no doubt, as well upon general principles as upon the authority of the case of Hill v. Burrow, just decided, that the words of this will would have created an estate-tail in Jesse Tate, prior to the act of 1776. The question, therefore, is, whether its being *313 made subsequent to that act, has altered the case? And 1 think not: For, the whole effect of that statute is to convert estates-tail into estates in fee simple; and not to alter the meaning of words, or destroy the established rules of construction.† My opinion, consequently, is, that the judgment of the District Court ought to be affirmed.
LYONS, Judge.
The case is not so strong as even that of Hill v. Burrow. For, here the first devisee would have had only an estate for life, unless he had taken an estate-tail. The judgment is right; and is to be affirmed.

[* Sec act Feb. 24, 1819, c. 99, § 25, 1 R. C. ed. 1819.]

[† See the opinion of Chancellor Kent, in Anderson v. Jackson, 16 Johns. R. 327-424.]